LATTIMORE, J.
Appellant was convicted in the district court of Lamar county of incest, and his punishment fixed at three years in the penitentiary.
[1] There appears in the record an unfortunate controversy over an alleged change in the indictment herein, it being contended by appellant that, as originally returned, said indictment charged, in substance, that Hart Chewning “did then and there carnally know Golden Rea, the said Golden Rea then and there being the daughter of Pearle Chewning, his wife,” and that at some time undiscovered by appellant until after conviction said indictment was changed by inserting between the words “his” and “wife” the word “lawful,” and by adding at the end of the charging part of said indictment the words, “who was then living.” Affidavits are filed before us by appellant and his attorneys, and also by the district judge and clerk, county attorney, and assistant county attorney. Any change in an indictment or other filed paper in any court raises a question of great gravity, and should be carefully investigated; but, in our view of the case, a discussion or decision of whether such change was made or not is immaterial to our decision of the case. We think the indictment sufficient regardless of the alleged change. In our opinion it was sufficient to charge that appellant carnally knew Golden Rea, who was then and there the daughter of Pearle Chewning, his wife. We think this sufficiently charges that Mrs. Chewning was then living, and was the lawful wife of appellant. In Compton v. State, 13 Tex. App. 271, 44 Am. Rep. 703, the indictment charged that—
“Daniel Compton * * * did * * * carnally know one Laura Griffin, * * * said Laura Griffin then and there being the daughter of Mrs. Sarah Compton, the lawful wife of him, the said Daniel Compton.”
We held in the opinion in that case that the words “then and there” referred as well to the fact that Mrs. Compton was the wife of the accused as that Laura Griffin was then and there her daughter. If Mrs. Chewning was not living, she could not be then and there the wife of Hart Chewning. It was not necessary that the indictment allege that Mrs. Pearle Chewning, the wife of Hart Chewning, was his lawful wife. Bailey v. State, 63 Tex. Cr. R. 584, 141 S. W. 224. The language of the statute makes penal the act of one who carnally knows his wife’s daughter (Pen. Code 1911, art. 486, 487).
[2] A letter written to prosecutrix by one Derrick was in evidence. It contained the following language;
“Very sorry we did not get to have the basket supper, wasn’t you, because as you know you and I was going to Paris together and— oh, you know what.”
*947 By a bill of exceptions appellant complains that said Derrick was permitted, over objection, to explain to the jury that what he had reference to and meant by said language, especially that part, “oh, you know what;” was that he and prosecutrix were going to Paris to have their pictures taken. Appellant’s objection was that the language used was plain, and the jury should have been allowed to pass on what it meant free from any explanation of the witness. The rule seems well settled that such explanation was admissible. Branch’s Ann. P. C. §§ 92, 93, and 94, and collated authorities. Apparently appellant’s contention was that said language conveyed the idea of a purpose on the part of Derrick and prosecutrix to engage in wrongful con* duet in Paris. If the language was plain, as contended by appellant, it meant the same after Derrick’s attempted explanation as before. If it was not plain, and a hurtful construction was possible, the explanation was proper. There is no conflict in the case of Ochoa v. State, 87 Tex. Cr. R. 318, 221 S. W. 973.
[3] It is contended that a peremptory instruction for acquittal requested by appellant should have been given because there was no evidence showing any character of legal dissolution of the marriage relationship between the father of Golden Rea and her mother, wife of appellant. The record discloses that no reference was made by any witness during the trial to the question of Mrs. Chewning having ever been married prior to her marriage to appellant. No one said or intimated that she had ever been married to any other man, and it was clearly not necessary for any one to testify to an ending or dissolution of a relationship which was not referred to by any witness. Stanford v. State, 42 Tex. Cr. R. 343, 60 S. W. 253; Nance v. State, 17 Tex. App. 385; Vickers v. State, 69 Tex. Cr. R. 633, 154 S. W. 578.
[4] No error was committed in allowing Golden Rea to testify that, the morning after the alleged incestuous intercourse, at a hotel in Paris, she went to the courthouse with an' officer. The objection to this testimony as shown by the bill of exceptions was that said evidence was hearsay. We do not think same subject to such objection.
[5, 6] Complaint is also made of the fact that the trial court did not tell the jury in so many words that Golden Rea was an accomplice. We find in the record no exception to the court’s charge upon this or any other matter. Such exception is necessary in order to have presented such ground of complaint. The court submitted to the jury the question as to whether Golden Rea was an accomplice. This we think sufficient. The girl seems to have testified that she did not willingly submit to appellant on the occasion in question. It seems to be the well-established rule that, when there is any doubt in the court’s mind as to the complicity of the alleged accomplice, the question should be submitted to the jury.
This disposes of the contentions of appellant as discussed in his brief. We have examined the other bills of exception appearing in the record, and are of opinion that none of them presents any error or raises such question as that its discussion would be of any value.
Finding no error in the record, the judgment of the trial court will be affirmed.

<@^>For ot':¡er eases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes